# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| KRISTIN KINNEY, | ) | CASE NO. 3:22-CV-01125-JRK |
| Plaintiff, | ) | |
| | ) | UNITED STATES DISTRICT JUDGE |
| | ) | JUDGE JAMES R. KNEPP, II |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | JENNIFER DOWDELL ARMSTRONG |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |

## I.  INTRODUCTION

Plaintiff Kristin Kinney ("Ms. Kinney") seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB"). (ECF Doc. 1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to a magistrate judge for preparation of a Report and Recommendation, and it was subsequently reassigned to me pursuant to General Order No. 2022-14. For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

## II.  PROCEDURAL HISTORY

Ms. Kinney was previously found to be not disabled in determinations dated October 31, 2014, and January 17, 2017. (Tr. 13, 78-87, 89).[1] On October 30, 2020, Ms. Kinney filed an application for DIB, alleging a disability onset date of November 26, 2015. (Tr. 13, 244-45). The

---

[1] The administrative transcript is located at ECF Doc. 5 of CM/ECF.

Social Security Administration ("SSA") denied Ms. Kinney's application initially and upon reconsideration. (Tr. 133-36, 154-63). Ms. Kinney requested a hearing before an administrative law judge ("ALJ"). (Tr. 164-65). On January 4, 2022, the ALJ held a telephonic hearing due to the COVID-19 pandemic, at which Ms. Kinney was represented by counsel. (Tr. 35-77). Ms. Kinney and a vocational expert ("VE") testified at the hearing. (Tr. 41-76).

On February 10, 2022, the ALJ issued a written decision finding that Ms. Kinney was not disabled. (Tr. 10-34). The ALJ's decision became final on May 2, 2022, when the Appeals Council declined further review. (Tr. 1).

On June 27, 2022, Ms. Kinney filed her Complaint, challenging the Commissioner's final decision. (ECF Doc. 1). Ms. Kinney asserts the following assignment of error:

(1) The ALJ failed to properly account for all of the opinions provided by the state agency mental health reviewing experts despite finding their opinions to be persuasive.

(ECF Doc. 7, PageID#4313).

### III. BACKGROUND INFORMATION

#### A. *Personal, Educational, and Vocational Experience*

Ms. Kinney was born in 1973, and she was 42 years old at the time of her alleged disability onset date. (*See* Tr. 37). Ms. Kinney lives with a roommate, and she has one adult daughter. (Tr. 41, 44). She has a GED. (Tr. 45). At the time of the hearing, Ms. Kinney had a driver's license. (Tr. 67). Her past relevant work was part-time employment as a restaurant server, cashier, and brand ambassador. (Tr. 261).

#### B. *Relevant Hearing Testimony*

##### 1. **Ms. Kinney's Testimony**[2]

---

[2] Because Ms. Kinney's assignment of error deals solely with her mental limitations, this summary will be limited to her hearing testimony regarding her mental conditions.

Ms. Kinney testified that she experiences depression and moodiness as a side effect of her post-breast cancer hormone therapy. (Tr. 54). She stated that she takes medication for her mental health that is helpful for her "some days." (*Id.*). She elaborated that some days are "like a rollercoaster" and that "it depends on the day…[s]ometimes it'll just come out of nowhere." (*Id.*). At times due to her depression, Ms. Kinney testified that she would not be able to take care of her personal hygiene. (*See* Tr. 58-59). She also reported experiencing anxiety and being easily irritable when interacting with others. (Tr. 65). She also testified that she experiences one panic attack per week, daily crying spells, and weekly flashbacks; has terrible memory; and struggles to maintain enough attention to follow a television program. (Tr. 65-66).

Ms. Kinney reported that she struggles with falling and staying asleep. (Tr. 66). As a result, Ms. Kinney stated that she naps daily for approximately an hour and a half to two hours. (*Id.*). She testified that she experiences suicidal thoughts. (*Id.*). In April 2021, she attempted suicide by deliberately crashing her car. (*Id.*). Ms. Kinney further testified that she has days where she experiences "paralyzing" lack of motivation. (*Id.*). When asked how often this happens, she explained that she has these unmotivated days "more often than [she does not] have them." (*Id.*).

She discussed how she has a history of substance abuse, including a relapse of cocaine use in 2020. (Tr. 57-58). She testified that she resided with a roommate in an apartment that was part of a treatment facility. (Tr. 41-42). She reported attending treatment for four hours per day. (Tr. 62). As part of her treatment, Ms. Kinney worked part-time as a peer support worker 15 hours per week. (Tr. 44).

### 2. Vocational Expert's Testimony

The vocational expert ("VE") testified that Ms. Kinney's past relevant work was as a server (DOT#311.477-030); telephone sales representative (DOT#299.357-014); office machines sales

3

representative (DOT#257.357-034); and business services sales agent (DOT#251.357-010). (Tr. 68-69). The ALJ asked the VE to hypothetically consider a person with Ms. Kinney's age, education, and experience at a light exertional capacity, except that she can understand, remember, and carry out simple instructions; perform simple, routine, and repetitive tasks, but not at a production rate pace, such as an assembly line; can tolerate few changes in the workplace;[3] and can adapt to routine changes in the workplace that are infrequent and easily explained. (Tr. 69-70).[4] The VE opined that this individual could not perform Ms. Kinney's past relevant work but could perform work as a cashier (DOT#211.462-010), cleaner (DOT#323.687-014); and routing clerk (DOT#222.687-022). (Tr. 70).

The VE opined that ordinary breaks would be a 30-minute lunch, one 15-minute break in the morning, and one 15-minute break in the afternoon. (Tr. 72). The VE stated that the on-task requirement for competitive work would be 85%. (*Id.*). The VE indicated that her testimony was consistent with the information in the *Dictionary of Occupational Titles* and the *Selected Characteristics of Occupations*. (*Id.*). However, the VE also indicated that she supplemented those publications with information regarding absenteeism, off-task behavior, lying down on the job, and specific limitations with fingering. (Tr. 72-73). Ms. Kinney's attorney asked the VE whether an individual would require an accommodation from her employer if she requires flexibility to adjust the time and duration of the lunch and break periods. (Tr. 73). The VE opined that this would require an accommodation. (*Id.*).

### C. *Relevant Medical/Non-Medical Opinion Evidence*[5]

---

[3] This was defined as routine job duties that remain static, and are performed at a stable, predictable work environment. (Tr. 69-70).
[4] The ALJ ultimately adopted this hypothetical RFC in her hearing decision.
[5] Because the crux of Ms. Kinney's argument focuses on the state agency opinions regarding her mental limitations, this summary will be limited to those opinions.

4

1. **Christi Bruening, Ph.D.**

On January 12, 2021, Dr. Bruening (a state agency psychologist) opined at the initial level that Ms. Kinney had mild limitations in understanding, remembering, or applying information and interacting with others, and moderate limitations in concentrating, persisting, or maintain pace and adapting or managing oneself. (Tr. 98-99). Dr. Bruening further found that Ms. Kinney could understand and remember simple and detailed instructions requiring initial learning periods, usually 60 days or less; carry out simple instructions for two-hour segments over an eight-hour workday, five days per week; tolerate contact with supervisors and co-workers in a public setting; and adapt to the expected and familiar changes and pressures of a routine work setting. (Tr. 103-06).

2. **Akanksha Dutt, Psy.D.**

On September 3, 2021, Dr. Dutt (a state agency psychologist) opined at the reconsideration level that Ms. Kinney had mild limitations in understanding, remembering, or applying information and interacting with others. (Tr. 122). Dr. Dutt also opined that Ms. Kinney had moderate limitations in concentrating, persisting, or maintaining pace, and adapting or managing oneself. (*Id.*). Dr. Dutt opined that given Ms. Kinney's concerns with concentration, mood, and worrying, Ms. Kinney will experience difficulty responding to sudden and immediate changes in the work setting. (Tr. 124). Dr. Dutt explained that Ms. Kinney will adapt and manage herself in a structured and predictable work setting, where major changes are explained to her and she is given time to adjust to new expectations. (*Id.*). With respect to Ms. Kinney's sustained concentration and persistence limitations, Dr. Dutt further found that Ms. Kinney's psychological concerns would interfere with her ability to always be present in the moment. (*Id.*). Dr. Dutt stated that the variability in her psychological symptoms will impact her ability to complete a normal

5

workday/work week, but not to the point of causing excessive disruptions. (*Id.*). Thus, Dr. Dutt opined that Ms. Kinney retained the ability to complete tasks without a sustained production pace or stringent daily quota and in a setting where there is some flexibility as to the scheduling of breaks. (*Id.*).

### D. *Relevant Medical Evidence*[6]

Ms. Kinney alleged disability beginning November 26, 2015, due to a combination of impairments, including major depression with anxiety and attention deficit hyperactivity disorder ("ADHD"). (Tr. 260). The ALJ summarized the medical evidence regarding these impairments as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a mild limitation. In interacting with others, the claimant has a mild limitation. With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. As for adapting or managing oneself, the claimant has experienced a moderate limitation. In an Adult Function Report, the claimant alleged that she had difficulty with personal care due to pain and lack of motivation (Ex. C6E). She was able to do laundry, drive, and shop, and enjoyed watching television. She spent time with others in person and over the phone. She would eat dinner with her family. She alleged problems with following instructions, and in managing stress and changes in routine (Ex. C6E). At the hearing, the claimant testified that she lives in a treatment group home with roommates. She is currently involved in peer support for work, working 15 hours per week and earning $11.00 per hour. She is able to drive and does have a car. She receives mental health treatment, which does help with her symptoms, but still experiences some symptoms. She last used cocaine in April of 2021. She is able to shower, but has trouble motiv[at]ing herself to perform personal care on a daily basis. The claimant alleged that she has panic attacks once a week, and has difficulty with her memory. She experiences crying spells,

---

[6] This summary is limited to Ms. Kinney's mental health symptoms.

according to her testimony, and has suicidal thoughts sometimes. The record as a whole supports the above levels of limitation in the specified areas of mental work-related functioning.

…

As for her mental impairments, the claimant attended mental health treatment throughout the period at issue. There was a medication management visit in August of 2017, where the claimant reported that she was working and living independently (Ex. C42F/770-775). She reported that she had a stable mood and was sleeping well, having been sober from cocaine for two months. She did continue to use alcohol over the weekends. She denied any suicidal ideations, and examination showed clear speech, logical thought processes, normal cognition, and mildly impaired judgment. Her medications were refilled (Ex. C42F/770-775). In November, she reported that she continued to work four days per week, but had resumed use of cocaine (Ex. C42F/793-798). Examination showed depressed mood and constricted affect. She was encouraged to attend therapy, and her medications were adjusted (Ex. C42F/793-798). At a follow up in January of 2018, she reported that she was again using her medications regularly, and had been sober from cocaine for a month, with no current depression or anxiety (Ex. C42F/815-819). The claimant did not return to medication management until September, where she noted that her mood was improved when she was taking her medications (Ex. C42F/863- 867). She denied any suicidal ideations, and her affect was appropriate. She was advised to continue her current medications (Ex. C42F/863-867). In November of 2018, the claimant reported that she continued to use cocaine (Ex. C42F/887-891). She stated that she was working two jobs, and had no emergency room visits since her last appointment. Examination showed no agitation or anxiety, with normal insight, normal attention and concentration, and no pressured speech (Ex. C42F/887-891). She reported in March of 2019 that she had been doing well, with no depressive episodes and improved anxiety (Ex. C42F/912-916). Examination showed euthymic mood, full affect, clear speech, logical thought process, and normal insight. Her medications were continued (Ex. C42F/912-916). In May of 2019, the claimant reported that she had been four months sober (Ex. C42F/917-923). Examination showed mild distress and anxiety, with no mood swings or suicidal ideations. Her medications were adjusted (Ex. C42F/917-921).

The claimant presented for a diagnostic assessment in September of 2020, noting that she had been sober from cocaine for 19 months, and had attended substance abuse treatment from February of 2019 through May of 2020 (Ex. C8F/3-6). She had complaints of depressive symptoms, anxiety, and episodic suicidal behaviors. Examination showed full orientation, hopeful and sad mood, appropriate affect, mildly impaired remote memory, normal psychomotor activity, and good eye contact. Therapy services were planned (Ex. C8F/3-6). At her medication management visit in November of 2020, the claimant reported that a medication adjustment had helped significantly, although she continued to have some mood lability (Ex. C10F/4-9). Examination showed denial of suicidal ideations, appropriate grooming, cooperative behavior, sad and anxious mood, congruent

affect, and intact memory. Her medications were adjusted (Ex. C10F/4-9). In April of 2021, the claimant was hospitalized after experiencing a manic episode after not taking medications consistently, with a relapse on cocaine (Ex. C21F/15- 16). She attempted suicide by deliberately crashing her car. Examination at time of discharge showed organized thought processes, with bright and reactive affect. She denied any suicidal ideations (Ex. C21F/15-16). She attended a primary care follow up in June, noting that she was feeling much better (Ex. C22F/36). Examination showed that she was alert and oriented, and she was referred for continued psychological treatment (Ex. C22F/30-31, 36).

She presented for substance abuse treatment in May of 2021, noting that she had been sober for two years prior to her recent relapse (Ex. C34F/26- 30; C35F/24-28; C39F/238-247). Examination showed appropriate grooming, depressed mood, congruent affect, cooperative behavior, slurred speech, fair insight, logical thought content, and no hallucinations The claimant noted that she did not feel that her medications had been effective in managing depression (Ex. C34F/18-23; C35F/16- 21; C39F/222-232). She completed 23 days of residential detoxification services, and denied any acute withdrawal symptoms (Ex. C34F/15-16; C35F/13- 14). It was recommended that she continue mental health and substance abuse services, including partial hospitalization program, weekly therapy, case management, group therapy, and medication management. At assessment in June, she reported feeling anxious and hopeless, but denied suicidal ideations (Ex. C39F/160-161). Examination showed disheveled appearance, sad affect, fair insight and judgment, and cooperative behavior (Ex. C39F/160-161). In August, the claimant reported recent stressors related to housing and aftercare plans, including applying for sober living (Ex. C39F/178-179). Examination showed appropriate grooming, anxious mood, congruent affect, fair insight, good judgment, cooperative behavior, good impulse control, and denial of suicidal ideations (Ex. C39F/178-179). In October, examination showed appropriate grooming, irritable mood, congruent affect, fair insight, good judgment, cooperative behavior, logical thought content, and denial of suicidal ideations (Ex. C39F/202-203). The claimant was noted to be showing progress in November of 2021, with examination showing appropriate grooming, anxious mood, congruent affect, fair insight and judgment, cooperative behavior, and denial of suicidal ideations (Ex. C39F/151-153). Neuropsychological evaluation was performed in November (Ex. C32F/80-84). IQ testing showed a full-scale IQ of 99, and brief neuropsychological testing showed low average but expected scores. It was noted that her symptoms did not indicate a primary developmental attention disorder, and it was noted that substance use could have negative associations to higher-level cognitive processing. She was advised to maintain sobriety, and to continue psychotherapy services (Ex. C32F/80). At a nursing visit in December of 2021, she noted no cravings, and a recent medication adjustment (Ex. C37F/44). It was noted that she was working as peer support at sober housing, and being trained on driving the passenger van to transport peers (Ex. C37F/44).

(Tr. 17-18, 21-22).

## IV. THE ALJ'S DECISION

The ALJ first determined that Ms. Kinney met the insured status requirements of the Social Security Act through June 30 2023. (Tr. 16). The ALJ next determined that Ms. Kinney had engaged in substantial gainful activity since January 18, 2017, but also determined that there is at least a 12-month period without substantial gainful activity during the period at issue. (*Id.*).

The ALJ further determined that Ms. Kinney had the following severe impairments: major depressive disorder; attention deficit hyperactivity disorder (ADHD); polysubstance abuse of alcohol and cocaine; chemotherapy induced neuropathy; total right hip replacement; and degenerative disc disease. (*Id.*). The ALJ determined, however, that Ms. Kinney did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*).

The ALJ further determined that Ms. Kinney could perform light work with the following mental limitations:

> [She] can understand, remember, and carry out simple instructions; perform simple, routine, and repetitive tasks, but not a production rate pace, such as an assembly line; she can tolerate few changes in the work setting, define as routine job duties that remain static and are performed in a stable, predictable work environment, and can adapt to routine changes in the workplace that are infrequent and easily explained.

(Tr. 18).

The ALJ next determined that Ms. Kinney is unable to perform any past relevant work. (Tr. 25). He also determined that the transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a "not disabled" finding regardless of whether Ms. Kinney has transferrable job skills. (*Id.*). However, the ALJ determined that, considering Ms. Kinney's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Ms. Kinney could perform,

9

including cashier (*Dictionary of Occupational Titles* (DOT) #211.462-010); cleaner (DOT #323.687-014); and routing clerk (DOT #222.687-022). (Tr. 26). Accordingly, the ALJ determined that Ms. Kinney was not disabled. (*Id.*).

## V. LAW AND ANALYSIS

### A. *Standard of Review*

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); see also 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th

Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

### B. *Standard for Disability*

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step

11

Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

### C. *Analysis*

Ms. Kinney argues in her sole assignment of error that the ALJ failed to properly account for the state agency psychologists' opinions when crafting Ms. Kinney's RFC. (ECF Doc. 7, PageID#4318-21). Specifically, one of the two state agency psychologists opined that that Ms. Kinney required some flexibility in the scheduling of breaks. Despite finding the state agency opinions persuasive, Ms. McKinney asserts that the ALJ specifically omitted the opined limitation that Ms. Kinney required a work setting that allowed for flexibility in scheduling of breaks, which makes the RFC "materially inconsistent" from the state agency opinions. (*Id.* at PageID#318). Ms. Kinney states that because the ALJ found the state agency opinions persuasive, the ALJ had an obligation to either account for that limitation within the RFC finding, or explain the reasoning for the limitation's omission. (*Id.* at PageID#4320). Without the ALJ's explanation, Ms. Kinney argues that the RFC is unsupported by substantial evidence. (*Id.*). Finally, she asserts that the ALJ's omission is not harmless error because the VE testified on cross-examination that a flexibility limitation would be considered an accommodation. (*Id.* at PageID#4321). Accordingly, she argues that the ALJ's failure to address the inconsistency significantly prejudiced her claim. (*Id.*). For the following reasons, I find that this assignment of error lacks merit.

An ALJ is not required to adopt every opined limitation from a state agency psychologist. Indeed, the Sixth Circuit has recognized that "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Specifically, the Sixth Circuit

determined that although the ALJ afforded great weigh to the consultant's opinions, only one of the two state agency consultants described the limitation and that limitation lacked substantial support elsewhere in the record. *Id.*

However, generally, an ALJ must build an "accurate and logical bridge" between the evidence and his conclusions. *Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 767 (N.D. Ohio 2019). To determine whether an omitted limitation is error, the pertinent question is "whether the medical evidence compels a specific, concrete restriction on the claimant's ability such that the ALJ was required to include it in the residual functional capacity or explain its omission." *Kreilach v. Comm'r of Soc. Sec.*, 621 F.Supp.3d 836 (N.D. Ohio 2022) (citing *Walker v. Saul*, No. 1:20-cv-0504, 2022 WL 1134300, at *4-5 (N.D. Ohio Apr. 18, 2022); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016)); *see also Overstreet v. Saul*, No. 1:20-CV-00645, 2021 WL 5017754, at *15 (N.D. Ohio May 17, 2021), *report and recommendation adopted*, 2021 WL 4145167 (N.D Ohio Sept. 13, 2021) (citing *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014)).

Courts in the Northern District of Ohio have determined that a need for a flexible break schedule is not a concrete, specific limitation. For example, in *Scott v. Saul*, No. 5:18 CV 2897, 2020 WL 2393155, at **2-3 (N.D. Ohio May 12, 2020), the court held that an ALJ's omission from the RFC the need for a flexible break schedule was not error. The claimant relied on a state agency consultant's opinion that the claimant "would benefit from a flexible break schedule due to symptoms fluctuations." *Id.* at *3. However, the court determined that the state agency consultant's opinion did not provide a meaning or define a need for such a schedule. *Id.* Thus, the court concluded that this limitation was unnecessary. *Id.*

Another court in the Northern District of Ohio reached a similar conclusion in *Overstreet v. Saul*, No. 1:20-CV-00645, 2021 WL 5017754 (N.D. Ohio May 17, 2021). As in *Scott*, the *Overstreet* court also held that an ALJ's omission of a flexible break schedule limitation was not error where both state agency psychologists opined that the claimant required a flexible break schedule. *Id.* at *15. The court reasoned that an opinion that a claimant's need for flexible break times is not a concrete functional limitation that must be accounted for in an RFC unless the opinion specifies a much more precise restriction, such as requiring additional breaks or taking breaks at a specific frequency. *Id.* Further, the court in *Overstreet* determined that the ALJ appropriately satisfied a non-specific limitation to flexible breaks by limiting the claimant to perform simple, repetitive tasks but not at production-rate pace. *Id.*

Significantly, in *Kreilach v. Commissioner of Social Security*, 621 F.Supp.3d 836 (N.D. Ohio 2022), the court also concluded that the ALJ did not err by omitting the need for "occasional flexibility for shifts and breaks due to symptoms fluctuation." *Id.* at 840. Only one of the two state agency psychologists opined that the claimant required such a limitation. *Id.* Relying on the rationale in *Scott* and *Overstreet,* the *Kreilach* court reasoned that the ALJ's omission was not error because the flexible work schedule was not a concrete, functional limitation. *Id.* at 845-46. Further, the court determined that *Kreze v. Berryhill*, No. 1:17-cv-01254, 2018 WL 3045097 (N.D. Ohio June 7, 2018), was distinguishable because: (1) only one of the two state agency psychologists opined that the claimant required a flexible work schedule; and (2) the claimant did not point to any other medical opinion that assessed a restriction about requiring flexibility. *Id.* at 846. Finally, the ALJ concluded that the claimant's RFC limitations were consistent with the jobs the VE opined the claimant could perform. *Id.*

14

Here, as in *Kreilach*, only one state agency psychologist opined that Ms. Kinney required flexible break times. *Kreilach*, 621 F.Supp.3d at 840, 846. Specifically, at the initial level, Dr. Bruening opined that Ms. Kinney had mild limitations in understanding, remembering, or applying information and interacting with others, as well as moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself. (Tr. 98-99). Dr. Bruening further opined that Ms. Kinney could understand and remember simple and detailed instructions requiring initial learning periods, usually 60 days or less; carry out simple instructions for two-hour segments over an eight-hour workday, five days per week; tolerate contact with supervisors and co-workers in a public setting; and adapt to the expected and familiar changes and pressures of a routine work setting. (Tr. 103-06). At reconsideration, Dr. Dutt affirmed Dr. Bruening's findings but additionally stated, in part, that Ms. Kinney had "the ability complete tasks without a sustained production paces or stringent daily quota and in a setting where there is ***some flexibility as to the scheduling of breaks***." (Tr. 124 (emphasis added)).

Further, the one state agency psychologist's opinion is ambiguous regarding Ms. Kinney's need for flexibility. As stated above, courts have found that opinions limiting claimants to a "flexible break schedule" or "flexible break times" are not concrete limitations. *Overstreet*, 2021 WL 5017754, at *15. Here, Dr. Dutt opines that Ms. Kinney requires "*some* flexibility as to the scheduling of breaks." (Tr. 124 (emphasis added)). This opinion lacks a clear, specific definition as to the need for such a schedule. *Scott*, 2020 WL 2393155, at *3 (N.D. Ohio May 12, 2020) (noting that a "flexible break schedule" is ambiguous and imprecise, whereas "may need an occasional extra break" was sufficiently precise to require that it be included in the RFC). It does not demonstrate that Ms. Kinney always requires a flexible work schedule. Moreover, Ms. Kinney does not demonstrate or point to any evidence in the record that supports this limitation. Nor does

15

she point to any other medical opinion beyond Dr. Dutt's sole opinion that Ms. Kinney had any limitation requiring flexibility in her work schedule.

Finally, Ms. Kinney also asserts that she has been prejudiced because the VE in response to a cross-examination that a flexibility limitation would be considered an accommodation. But as discussed above, the ALJ did not err by deciding not to include in Ms. Kinney's RFC a limitation to work permitting a flexible break schedule. Accordingly, I recommend that the Court reject this assignment of error because it lacks merit.

## VI. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court OVERRULE Ms. Kinney's assignment of error and AFFIRM the Commissioner's decision.

Dated: June 12, 2023                                    s/ *Jennifer Dowdell Armstrong*
                                                        Jennifer Dowdell Armstrong
                                                        U.S. Magistrate Judge

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in

16

> such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).